**Christopher MOSLEY, Plaintiff,**

v.

**BAY SHIP MANAGEMENT, INC., Robert C. Wattam and the United States of America, Defendants.**

No. Civ.A. 00–2306(JCL).

United States District Court,
D. New Jersey.

Dec. 27, 2000.

Henry Alan Gluckstern, Maplewood, NJ, for Plaintiff.

Kevin P. Kopp, Kaufman, Borgeest & Ryan, New York City, Pamela R. Perron, Office of the U.S. Attorney, Newark, NJ, for Defendants.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

### *INTRODUCTION*

Defendants Bay Ship Management, Inc. ("BSM") and Robert C. Wattam ("Wattam") move to dismiss plaintiff's complaint pursuant to Rule 12(b)(6). In their moving papers, the defendants base an argument for dismissal on a release signed by plain-

tiff on November 30, 1999. Pursuant to the Court's Order dated October 25, 2000, the defendants' motion for dismissal based on the release will be treated as a motion for summary judgment. On November 20, 2000, pursuant to the parties' stipulation, the Court ordered dismissal of this action only as to the defendant United States.

For the following reasons, defendants' motion for summary judgment will be granted.

### BACKGROUND

BSM is a Delaware corporation which does business in New Jersey. The *Antares* is a ship owned by the United States of America. BSM operates sea vessels, including the *Antares,* on behalf of the United States for the Department of Navy's Military Sealift Command. (Complaint ¶ 8) The *Antares* was based in Baltimore, Maryland. (Complaint ¶ 15)

On May 27, 1997, the plaintiff was employed by BSM in the capacity of Chief Steward on the *Antares.* Plaintiff and his department were responsible for cleaning the ship and operating the laundry services. As Chief Steward, plaintiff reported to the Master of the ship. Wattam was hired as Master of the *Antares* in mid-January, 1999. The plaintiff alleges that Wattam did not act in a professional or harmonious manner towards the plaintiff based on plaintiff's skin color. Plaintiff alleges that Wattam only engaged in "the barest minimum amount [of conversation] necessary to communicate his orders." (Complaint ¶ 27) According to plaintiff, this lead to "an un-natural, counter-productive, and hostile work environment." (Complaint ¶ 27)

On September 13, 1999, Wattam terminated plaintiff's employment because, according to the defendants, the plaintiff did not carry out the duties that Wattam had ordered the previous weekend. (Com-

plaint ¶ 31) Plaintiff claims that he was wrongfully discharged by Wattam due to racial discrimination. (Complaint ¶ 52)

The record indicates that on September 13, 1999, the plaintiff filed a grievance report which is formally labeled the "Beef Report." In the Beef Report, plaintiff wrote that his "Beef Question" was: "being discharged under racial conditions, being discharged by unfair practice." (Defendant's Motion for Summary Judgment, Exhibit A) Dennis Metz was the official port agent who received the report. He made the following notes: "member filed beef 'report' on the above date, but had no statement or rebutle [sic], to refute the discharge. Could, at this time give me nothing to work with. Member will prepare a statement so that I may properly handle this grievance." (Defendant's Motion for Summary Judgment, Exhibit A) On September 14, 1999, the plaintiff made a subsequent statement in which he discussed the abusive attitude of Wattam and explained that "my department always seems to get jumped on about overtime and job performance. Maybe this is the time to mention that my department is all black (African Americans)." (Mosley Affidavit, Exhibit B, p. 4) Plaintiff supplemented this statement on September 17, 1999. (Mosley Affidavit, Exhibit C). In his third statement, plaintiff states: "I feel like Capt. Wattam should be trained in how to deal with Blacks. If his problem with blacks is more deeply rooted than that which can be corrected, then he should not be in the position as Captain of a vessel. Also in this particular day and age to have such prejudice openly displayed is beyond belief." (Mosley Affidavit, Exhibit C, p. 2)

A Port Committee hearing was conducted on November 30, 1999. At the hearing, two representatives of the Seafarers International Union ("SIU"), Steve Ruiz and Dennis Metz, were present. (Mosley Affi-

davit ¶ 23) Plaintiff was not represented by counsel. Plaintiff prepared and signed a hand-written agreement on November 30, 1999 which states: "I Christopher Mosley 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 have agree [sic] to drop my beef against Bayship Management—that they drop the charges and agree to have quit on mutual consent." (Mosley Affidavit, Exhibit E) Following the hearing, Mr. Mosley received a copy of Dennis Metz's letter to BSM explaining the November 30, 1999 proceedings: "The Co. agreed to at the time of this meeting, to consider Mr. Mosley's mutual consent with reguard [sic] to his discharge for cause. As a result Bay Ship Mgt. will drop any MIB and/or pending SAB charges. This agreement should conclude the incident/issue. Mr. Mosley as a result, is dropping any and all grievances relative to this matter." (Mosley Affidavit, Exhibit F)

Plaintiff then filed a complaint with the EEOC alleging racial discrimination claims against Wattam. BSM was not specifically named in the complaint to the EEOC. The plaintiff's exact words were: "I was employed as a Merchant Seaman on May 28, 1997, as the Chief Steward on board the USNS *Antares*. I was discharged from employment on September 13, 1999. I believe I have been discharged because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended." (Mosley Affidavit, Exhibit I) The EEOC sent plaintiff a right to sue letter dated January 27, 2000.

On May 12, 2000, plaintiff filed a complaint in this Court claiming that defendants' discriminatory practices violated Title VII, 42 U.S.C. § 1981, the New Jersey Law Against Discrimination ("NJLAD") and the Maryland Commission of Human Rights Law. Specifically, the plaintiff's complaint makes the following claims:

1. Plaintiff was wrongfully discriminated against as an African American in violation of Title VII, the New Jersey Law Against Discrimination ("NJLAD") and the Maryland Commission of Human Rights Law. (Complaint ¶ 51–66)

2. Defendants violated 42 U.S.C. § 1981 by creating and maintaining a hostile work environment. (Complaint ¶ 67–77)

3. Plaintiff was wrongfully discharged in violation of Title VII. (Complaint ¶ 78–84)

4. Defendants violated Title VII by creating and maintaining a hostile work environment. (Complaint ¶ 85–89)

5. Defendants violated NJLAD by wrongfully discharging the plaintiff. (Complaint ¶ 90–97)

6. Defendants violated NJLAD by creating and maintaining a hostile work environment. (Complaint ¶ 98–103)

7. Defendants violated Article 49B by creating and maintaining a hostile work environment. (Complaint ¶ 104–109)

8. Defendants interfered with the contract between the United States and BSM to which plaintiff is a third-party beneficiary. (Complaint ¶ 110–114)

9. United States negligently delegated and entrusted the operation of the *Antares* by BSM. (Complaint ¶ 115–117)

### STANDARD OF REVIEW

*A. Summary Judgment*

Summary judgment eliminates unfounded claims without recourse to a costly and lengthy trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law determines which facts are material. *Id.* at 248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *See id.* at 249, 106 S.Ct. 2505.

### B. Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss for failure to state a claim serves to test the sufficiency of the complaint. *See Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). In considering such a motion, all allegations in the complaint must be taken as true and

viewed in the light most favorable to the plaintiff. *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998); *Robb v. Philadelphia,* 733 F.2d 286, 290 (3d Cir.1984). A court should not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Zynn v. O'Donnell,* 688 F.2d 940, 941 (3d Cir.1982). While a court must assume the alleged facts are true, it is not proper to assume that a plaintiff can prove facts not alleged. *See Bishop v. Okidata, Inc.,* 864 F.Supp. 416, 420 (D.N.J.1994). A court may, however, consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *See Pension Ben. Guar. Corp. v. White Consol. Ind.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

### DISCUSSION

### A. Summary Judgment on Claims Subject to Release

The defendants argue that plaintiff's claims of wrongful discharge in violation of Title VII, 42 U.S.C. § 1981, and NJLAD should be dismissed because plaintiff signed a waiver of his right to bring all wrongful discharge claims by preparing and signing the release at the Port Committee Hearing on November 30, 1999.

■ The standard for determining the validity of a release is the "totality of circumstances," but the Court of Appeals

for the Third Circuit has established the factors which a court may consider:

> relevant factors in reviewing the totality of circumstances include, but are not limited to, the following considerations: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir.1988), *superseded by statute as stated in Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir.1997) (holding that the factors established in Cirillo were no longer applicable to alleged waiver of ADEA rights because new legislation (the Older Workers Benefit Protection Act (OWBPA)) requires specific formalities when executing a release of liability under the ADEA).

A recent decision from the United States District Court for the District of New Jersey applied the *Cirillo* factors to a situation similar to this case. *See Riddell v. Medical Inter–Ins. Exch.*, 18 F.Supp.2d 468 (D.N.J.1998). The plaintiff in *Riddell* was charging her former employer with violations of the NJLAD. The Court held that "the agreement itself could have made a finding of a valid waiver more likely if the Release language: (1) was more prominent; (2) identified the rights being waived; and (3) informed Riddell that she

had time to deliberate and a right to consult with an attorney." *Id.* at 474.

■ In this case, an application of the *Cirillo* factors demonstrates that the release signed by Plaintiff does satisfy the "totality of circumstances" standard. Plaintiff signed a handwritten statement that he would drop his "beef" against BSM. Although the word "beef" is not legalistic, it is clear. The Court of Appeals for the Third Circuit has emphasized that clarity of the language is not as relevant as the comprehension of the terms by the person waiving their civil rights. *See Coventry v. United States Steel Corp.*, 856 F.2d 514, 522–24 (3d Cir.1988) (acknowledging the importance of a contract law analysis regarding the ambiguity of terms but requiring a more thorough analysis of the totality of circumstances involved in signing a waiver).

Therefore, the main issue in this case is whether plaintiff knew that his "beef" against BSM included charges of discrimination. Plaintiff initiated the Port Committee Hearing by filing a grievance with the SIU. (Mosley Affidavit, Exhibits B and C) Plaintiff's initial statement in the formal Beef Report states that he was discharged due to racial discrimination and unfair practice. In his subsequent statements to the SIU, plaintiff mentions his suspicions that Wattam was treating him disparately due to plaintiff's African American heritage. Accordingly, plaintiff lodged a grievance regarding discriminatory conduct on the *Antares*. For plaintiff to claim he did not know that dropping his "beef" against BSM included dropping racial discrimination charges is disingenuous. Defendants point out that plaintiff understood the significance of a Beef Report because he filed a similar report in 1980 to lodge a grievance involving a passport. (Defendants' Memorandum of Law in Further Support of Motion for Summary Judg-

ment, Exhibit B). Accordingly, when plaintiff agreed to drop his "beef" against the defendants, he knowingly and voluntarily waived his right to bring subsequent litigation.

The Appellate Division of the New Jersey Superior Court has adopted the totality of the circumstances test established by the Court of Appeals for the Third Circuit in *Coventry* and *Cirillo*. *See Swarts v. Sherwin–Williams Co.*, 244 N.J.Super. 170, 581 A.2d 1328 (App.Div.1990); *see also Keelan v. Bell Communications Research*, 289 N.J.Super. 531, 674 A.2d 603 (App.Div.1996). Consequently, the Court's analysis set forth above also shows that plaintiff executed a knowing and voluntary release of his claims under the NJLAD.

■ The plaintiff argues that he was not given the opportunity to consult with counsel. However, the record does not indicate that plaintiff was prohibited from seeking the aid of counsel. Dennis Metz and Steven Ruiz from the SIU were present to assist plaintiff. An examination of the official "Beef Report" reveals that the SIU representatives and plaintiff understood the association of the term "beef" with formal grievances against an employer.

■ Plaintiff next argues that he was unaware his Title VII claims were waived. However, plaintiff's subjective belief is insufficient to sustain his complaint. In *Swarts*, the court affirmed the trial court's grant of summary judgment for the defendant employer because the plaintiff was unable to establish a genuine issue of material fact. The plaintiff in *Swarts* had submitted a letter of grievance to his employer alleging forced retirement based on age discrimination. Subsequently, the plaintiff signed a release of any claims against his employer in consideration for payment of retirement benefits. In an affidavit filed later, the plaintiff claimed that he was unaware he was waiving his

right to sue his employer for age discrimination. In affirming summary judgment, the court held that

> [a]n opponent to a summary judgment motion cannot defeat the motion by raising a misguided subjective belief without more, to create the existence of a genuine issue of material fact. In this instance, plaintiff seeks to establish a genuine issue of material fact by asserting in an "affidavit" he did not intend to waive his age discrimination rights when he signed the release. Yet, acceptance of that representation would allow defeat of the summary judgment motion based on a misguided subjective belief. At the time he signed the release, it is undisputed he had a full awareness of his age discrimination rights as evidenced by his prior assertion of his rights in his letter to the personnel department. What his unexpressed intention was is irrelevant. To draw any conclusion other than that he was fully aware of his age discrimination rights would belie logic and undermine the appropriateness of the summary judgment process as well as undermine the voluntary settlement process.

*Swarts*, 244 N.J.Super. at 178, 581 A.2d 1328 (citing *Cirillo*, 862 F.2d at 452–53). Under *Swarts*, the plaintiff in this case cannot defeat summary judgment based on his mistaken belief that the release did not include allegations of racial discrimination. The evidence of plaintiff's racial discrimination accusations against defendants in his initial "Beef Report" cannot be overcome by the plaintiff's alleged subjective belief that they were not what they clearly were.

■ The defendants next attack the plaintiff's argument that the release was signed under duress. Plaintiff contends that he was forced to execute the release

because he would not be able to obtain employment if the circumstances of his termination were categorized as wrongful discharge. Both the Court of Appeals for the Third Circuit and the New Jersey Appellate Division have held that "economic pressure alone is not enough to constitute duress rendering an otherwise valid release void." *Keelan v. Bell Communications Research*, 289 N.J.Super. 531, 548, 674 A.2d 603 (App.Div.1996) (citing *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885 (3d Cir.1975); *The Adonis*, 38 F.2d 743, 744 (3d Cir.1930); *Killian v. McCulloch*, 873 F.Supp. 938, 943 (E.D.Pa. 1995); *Reed v. SmithKline Beckman Corp.*, 569 F.Supp. 672, 674 (E.D.Pa.1983)). In *Keelan*, the court rejected plaintiff's claim that he was under duress due to financial distress. *See also Swarts*, 244 N.J.Super. at 179, 581 A.2d 1328 (rejecting plaintiff's assertion that he had to sign the release under the duress of "sign or starve"). Accordingly, plaintiff's argument that he was forced to sign the release lacks merit. In fact, plaintiff received negotiated consideration for signing the release because BSM altered the reason for termination from "with cause" to "mutual consent," and BSM agreed to drop any charges against the plaintiff.

## B. Dismissal of Claims based on Maryland Law

The plaintiff's opposition brief admits that the mention of Maryland law in the complaint was misplaced. Therefore, the plaintiff agrees to the dismissal of Claim 7 in its entirety, as well as dismissal of Paragraph 58 of Claim 1. (Plaintiff's Brief at p. 29, ¶ 1)

## C. Dismissal of Claims under the NJLAD

The defendants argue that the plaintiff is not entitled to protection under the NJLAD because the plaintiff has no connection to New Jersey. The plaintiff responds that New Jersey has a governmental interest in protecting non-inhabitants from discriminatory conduct violating the NJLAD by a corporation which does business in New Jersey. According to the record, plaintiff is a citizen of Pennsylvania and defendant BSM is a Delaware corporation. The alleged discriminatory conduct occurred in Maryland. Therefore, it seems that the facts of this case suggest little reason to apply the NJLAD. However, the Court need not address defendants' argument regarding the applicability of the NJLAD because this Court has already decided to grant defendants' motion for summary judgment.

## D. Dismissal of Title VII Claims against Wattam

■ Defendants next argue that plaintiff's Title VII claim should be dismissed with respect to defendant Wattam because Title VII does not contemplate liability of individual employees. Defendants properly note that the Court of Appeals for the Third Circuit, like the majority of Circuits, has held that individual employees may not be held liable under Title VII. *See Sheridan v. E.I. DuPont Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir.1996), *cert. denied*, 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997) ("Congress did not intend to hold individual employees liable under Title VII."); *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) (holding that individual employees cannot be held liable under Title VII). Plaintiff's argument that individuals may be held liable under Title VII when they act as "agents" of the employer is without merit. In *Kohn v. AT & T Corp.*, 58 F.Supp.2d 393 (D.N.J.1999), this Court vigorously rejected that very argument, and instead, citing the holdings of *Sheridan* and *Dici*, noted that the law in the

Third Circuit is "settled" and "dispositive" in foreclosing any possibility of individual liability under Title VII. *Kohn* at 421; *see also Kachmar v. SunGard Data Sys., Inc.* 109 F.3d 173 (3d Cir.1997). Thus, plaintiff's Title VII claims against individual defendant Wattam must be dismissed.

### E. Plaintiff's Failure to Exhaust Administrative Remedies

The defendants argue that the plaintiff did not exhaust all the administrative remedies available because the plaintiff omitted information when he filed his complaint with the EEOC. First, the defendants claim that the plaintiff failed to mention BSM in the EEOC complaint so the EEOC has only investigated Wattam's role in the case. Second, the defendants claim that the plaintiff's hostile work environment claim is barred because plaintiff did not mention the charge of hostile work environment in his filings with the EEOC.

In *Gooding v. Warner–Lambert,* 744 F.2d 354 (3d Cir.1984), the Court of Appeals for the Third Circuit noted that the issuance of an EEOC right-to-sue letter is not a jurisdictional prerequisite to a Title VII claim. *Gooding,* 744 F.2d at 358. Indeed, the Court of Appeals for the Third Circuit has held that "the failure to obtain a right-to-sue letter ... is curable at any point during the pendency of the action" because the court will not "penalize the appellants" for the EEOC's failure to follow up on discharge charges or an attorney's failure to obtain right-to-sue letters. *Anjelino v. New York Times Co.,* 200 F.3d 73, 96 (3d Cir.1999); *see also Gooding,* 744 F.2d at 357–59 (eschewing "highly technical pleading rules, which only serve to trap the unwary practitioner," in favor of notice pleading, and reversing dismissal of Title VII action where an EEOC right-to-sue letter issued after complaint was filed); *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398–99 (3d Cir.1976) (holding that "the parameters of a civil action in the District Court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charges of discrimination").

Accordingly, the holding in *Anjelino* runs contrary to the defendants' argument because the plaintiff could amend his EEOC complaint and cure the alleged failure to exhaust administrative remedies. However, the Court need not resolve this issue because it has dismissed plaintiff's claims of wrongful discharge and hostile work environment based on the plaintiff's release.

### F. Dismissal of Contract Claims

■ Defendants move to dismiss the Eighth Count of plaintiff's complaint on the grounds that the common law causes of action for breach of contract and tortious interference are "subsumed" by the LAD. Defendants contend that these claims, which stem from the alleged racial discrimination, are duplicative of the LAD and should be dismissed. Upon careful consideration of the statutory language and case law, the Court disagrees.

The New Jersey state courts and this Court have frequently held that the LAD bars common law discrimination claims that are duplicative of the LAD. *See, e.g., Catalane v. Gilian Instrument Corp.,* 271 N.J.Super. 476, 492, 638 A.2d 1341 (App. Div.1994) (holding that supplementary common law causes of action may not go to the jury when a statutory remedy under the LAD exists); *DeCapua v. Bell Atlantic—New Jersey, Inc.,* 313 N.J.Super. 110, 128, 712 A.2d 725 (Law Div.1998) ("Because plaintiff's common-law breach of contract claim duplicates his statutory claim under New Jersey's LAD, it is barred."); *Mardini v. Viking Freight, Inc.,* 92 F.Supp.2d 378, 382–385 (D.N.J.

1999) (dismissing a wrongful termination claim which involved the same elements of discrimination as the LAD claim); *DeJoy v. Comcast Communications, Inc.,* 941 F.Supp. 468, 476 (D.N.J.1996) (finding plaintiff's common law claim preempted by the LAD where plaintiff provided no information showing his common law claim was "different or broader" than his LAD claim).

However, it is clear from the case law and a review of the LAD itself that the LAD does not necessarily bar all common law causes of action that might be implicated in an LAD action. In *Shaner v. Horizon Bancorp,* 116 N.J. 433, 454, 561 A.2d 1130 (1989), the New Jersey Supreme Court noted that "a plaintiff in appropriate circumstances could pursue an independent action ... to vindicate particular interests in addition to or aside from those sought to be protected by a LAD action." *Shaner,* 116 N.J. at 454, 561 A.2d 1130; *see also Dale v. Boy Scouts of America,* 308 N.J.Super. 516, 543, 706 A.2d 270 (App.Div.1998) (internal citations omitted), *aff'd* 160 N.J. 562, 734 A.2d 1196 (1999), *rev'd on other grounds,* 530 U.S. 640, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000). In the policy declaration accompanying the act, the New Jersey Legislature made clear that it did not intend that the LAD would preempt other causes of action: "[The LAD] shall be liberally construed in combination with other protections available under the laws of this State." N.J. STAT. ANN. § 10:5–3; *see also,* N.J. STAT. ANN. § 10:5–13 ("All remedies available in common law tort actions shall be available to prevailing plaintiffs."). Furthermore, § 10:5–27 of the LAD states:

Nothing herein contained shall bar, exclude, or otherwise affect any right or action, civil or criminal, which may exist independently of any right to redress against or specific relief from any unlawful employment practice or unlawful discrimination.

N.J. STAT. ANN. § 10:5–27. Given the statutory language, this Court finds that the legislature intended that the LAD would supplement, rather than preempt, other causes of action. Therefore, plaintiff's common law claims may not be dismissed.

### 1. Breach of Contract

■ Because plaintiff's common law claims are not preempted, the Court next considers defendants' argument that the Eighth Count of plaintiff's complaint should be dismissed because plaintiff has failed to allege the existence of any third party protections under a valid contract. The complaint alleges that defendant BSM breached its contract with the United States by failing to adhere to its requirement that BSM observe the civil rights laws of the United States. New Jersey and Maryland, and that plaintiff was a third-party beneficiary of that contract. Since it is well-known that parties contracting with the United States and its agencies are required to observe civil rights laws applicable to performance of the contract, defendants' motion to dismiss the Eighth Count will be denied.[1]

### 2. Tortious Interference

■ The defendants also move to dismiss the Eighth Count of plaintiff's complaint for tortious interference with the contract between defendants and the United States Naval Forces. Defendants argue that plaintiff cannot sustain a tortious interference with contract claim because plaintiff has failed to identify any of the

---

**1.** It does not appear that defendants seek summary judgment on the Eighth Count based on the release.

defendants as third parties to the contract. Consequently, defendants contend that plaintiff has failed to state a claim for relief for the Eighth Count in plaintiff's complaint.

New Jersey courts have held that it is " 'fundamental' to a cause of action for tortious interference ... that the claim be directed against defendants who are not parties to the relationship." *Printing Mart–Morristown v. Sharp Electronics Corp.,* 116 N.J. 739, 752, 563 A.2d 31 (1989). Here, defendant BSM, as plaintiff's employer, was clearly a party to the alleged employment contract with the United States. As a result, BSM cannot be held liable for tortious interference with its own contract. *Custom Communications Eng'g v. E.F. Johnson Co.,* 269 N.J.Super. 531, 543, 636 A.2d 80 (App.Div. 1993) (stating that a tortious interference claim must be directed against persons who were not parties to a contract); *Kopp v. United Technologies, Inc.,* 223 N.J.Super. 548, 539 A.2d 309 (App.Div.1988) ("A party cannot be guilty of inducing the breach of its own contract").

Claims for tortious interference with a contract brought by an employee against a supervisor (such as Wattam) acting in the course of his employment must be dismissed. *Horvath v. Rimtec Corporation,* 2000 WL 1030357, *9 (D.N.J. July 19, 2000). "Only when an employee asserts that an officer or agent of corporation (sic) acted outside the scope of his employment and/or for his own personal gain may the employee go forward with his claim for tortious interference." *Id.* Under New Jersey common law, "to be within the scope of employment, the employee's behavior must be 'actuated, at least in part, by a purpose to serve the master.' " *Di Cosala v. Kay,* 91 N.J. 159, 169, 450 A.2d 508 (1982) (quoting Restatement (Second) of Agency § 228 (1957)). Accord-ingly, plaintiff's allegation that Wattam tortiously interfered with the contract between BSM and the United States must be dismissed. However, the Court has denied defendants' motion to dismiss the Eighth Count as to plaintiff's claim that BSM breached its contract with the United States of which he is a third-party beneficiary.

Accordingly, IT IS on this 27 Th day of December, 2000 **ORDERED** that the defendants' motion for summary judgment against the plaintiff on Counts One through Six, which are subject to the plaintiff's release, is granted; and it is further

**ORDERED** that the defendants' motion to dismiss the Seventh Count of plaintiff's complaint, alleging violations of Maryland law, is granted; and it is further

**ORDERED** that defendants' motion to dismiss the Eighth Count of plaintiff's complaint, alleging breach of contract of which he is a third-party beneficiary, is denied.